## Seidler v. Gayville Supply Company.

*Equity—Receiver—Rule on receiver to show cause why claim should not be collected.*

1. Where, on a rule to show cause why a receiver should not proceed to collect from stockholders balances alleged to be due and owing by them on their stock subscriptions, the court was of the opinion, from the proofs produced at the hearing on the rule, that it was improbable that a suit by the receiver against the subscribers of the capital stock would result in the recovery of any money for the use of the creditors, the court refused to direct the receiver to institute such suit.

2. However, since it is possible that another creditor may be able to produce proofs that the subscribers had not paid the full amount of the subscriptions, such creditors should not be barred from proceeding against the corporation and its stockholders by a creditors' bill to enforce the alleged liability.

3. Payment of subscriptions by transfer of property to corporation considered.

Petition and rule to show cause why receiver should not proceed to collect amounts alleged to be due from stockholders. C. P. Westmoreland Co., No. 1258, in Equity.

*Maurice J. K. Davis* and *Gregg & Gregg*, for rule; *Marker & Rial*, contra.

WHITTEN, J., March 31, 1927.—Upon a bill filed by O. E. Seidler, a stockholder of Gayville Supply Company, a Pennsylvania corporation, the court appointed a temporary receiver in order to protect the assets of said corporation from being sold, it being alleged that said corporation was insolvent.

It has since been shown that the said corporation was then and is now insolvent.

After the insolvency of said corporation was established, at the instance of Wilson & Company, a common creditor thereof, the court granted a rule on the receiver to show cause why he should not proceed to collect from the stockholders thereof the balance alleged to be due and owing by them to said corporation for capital stock subscribed for by them prior to the incorporation thereof.

The receiver answered that, according to his best information and belief, the subscribers for the said shares of stock, subsequent to such incorporation, had paid the amount thereof to the corporation by the transfer to it of merchandise of greater value than the amount of such subscriptions.

At a hearing upon said rule it was shown:

1. M. A. Gay, O. E. Seidler and W. F. Feely each subscribed for 100 shares of stock of the par value of $50 per share, and that, prior to the granting of the charter, 10 per cent. ($2500) of the authorized capital stock was paid to the treasurer of the corporation.

2. The total assets of the corporation—other than the alleged unpaid stock subscriptions—for distribution among creditors is about $1800, while the total indebtedness is about $6200.

3. Nov. 28, 1924, the directors of said corporation, by resolution duly adopted and recorded on the minutes of the board, purchased from the Gayville Supply Company, a partnership composed of Seidler, Gay and Feely, all the merchandise and assets of such partnership for the sum of $21,000. The corporation made payment therefor by issuing to said partners 420 shares of

capital stock, including the stock already subscribed for by the said partners. The said resolution states that the said merchandise was worth the sum of $21,000.

4. On the same day, at a meeting of the stockholders of the said corporation, a resolution was adopted ratifying and approving the action of the board of directors in purchasing the said merchandise.

5. In March, 1924, a member of the said partnership made statements to a representative of Bradstreet Company, showing the assets of said partnership to be as follows:

| | |
|---|---|
| Merchandise | $5000.00 |
| Fixtures | 3000.00 |
| Cash | 1000.00 |
| Accounts receivable | 5000.00 |
| **Total** | **$14,000.00** |

A member of the partnership also stated that the firm owed about $9000. However, it appears that Gay, one of the partners, subsequent to the sale of said firm assets to the corporation, paid debts of the said firm in excess of $15,000.

"1. In an action by the receiver of an insolvent corporation to recover for an alleged unpaid stock subscription on the ground that it has not been paid in cash but in property, and this manner of payment had not been set forth in the articles of association, as required by the Act of April 17, 1876, P. L. 30, there can be no recovery where it appears that the property was acquired by the corporation from the defendant and the stock certificate issued to him in payment several months after the certificate of incorporation was signed by him, where it does not appear that at the time the certificate of incorporation was signed it was known that the stock subscription would be paid for in property.

"2. If the payment was made in property suitable for the purposes of the corporation at a just valuation and without fraud, it was a valid payment, of which creditors could not complain.

"3. A corporation, once it has been formed and is actually being operated, may accept in payment of an original and unconditional stock certificate its fair equivalent in property.

"4. The burden of proof is upon the subscriber who has paid for his stock something else than cash to show that the transaction was based upon a contract with the company, that it was fair and that the property had been valued by those representing the corporation in good faith:" Krebs, Receiver, v. Oberrender, 274 Pa. 154.

"3. A receiver represents not only the corporation but all its creditors, and, as to the latter, it is his duty to secure all the assets available for their payment.

"4. Statutes which furnish appropriate remedies for the creditors of corporations as against the stockholder must be strictly followed; but where no specific remedy is provided, then the common law remedy of a claimant may be enforced by him, or by a receiver on behalf of all like situated, and a bill in equity can be maintained to secure appropriate relief:" Cochran v. Shetler, 286 Pa. 226.

Ordinarily, the liability of subscribers to pay for corporation stock is enforced by the receiver of the corporation. However, this may also be accomplished by means of a creditors' bill: Savidge on Penna. Corp., § 1042.

Seidler v. Gayville Supply Company.

The court is of the opinion, from the proofs produced at the hearing upon the above rule, that it is improbable that a suit by the receiver against the said subscribers to the capital stock of the corporation would result in the recovery of any money for the use of the creditors of the corporation, and, therefore, the court is constrained not to direct the receiver to institute such suits.

However, since it is possible that another creditor may be able to produce proofs that such subscribers for capital stock have not paid the full amount of their subscriptions, they should not be barred from proceeding against the corporation and its stockholders by means of a creditors' bill to enforce the alleged liability of such stockholders.

### Decree.

And now, March 31, 1927, after hearing the parties and their witnesses and arguments of counsel, and after due consideration, the petition of Wilson & Company is dismissed, without prejudice to the right of any creditor of the said corporation to file a creditor's bill against said corporation and its stockholders for discovery and to enforce the rights of such creditors.

From William S. Rial, Greensburg, Pa.