**In re ROBIN ASSOCIATES, Debtor.**

**Robin Associates, Movant,**

v.

**Metropolitan Bank and Trust Company, Respondent.**

**Bankruptcy No. 01–26725–MBM. Motion No. 01–4771M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 1, 2001.

Daniel J. Gates, Gates & Associates, P.C., Warrendale, PA, for Debtor.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **1st day** of **November, 2001,** upon consideration of

(a) the motion of Robin Associates, the above-captioned debtor, for an order of this Court authorizing the debtor's post-petition use of rents generated by real property that it owns (hereafter "the Rents"), which rents the debtor (i) maintains constitute cash collateral of Metropolitan Bank and Trust Company (hereafter "Metropolitan"), the instant respondent, pursuant to 11 U.S.C. § 363(a), and (ii) contends it may use as a means to fund any reorganization plan which it would ultimately propose if the Court so orders pursuant to 11 U.S.C. § 363(c)(2)(B),

(b) Metropolitan's objection to the debtor's motion for an order authorizing the debtor's post-petition use of the Rents, wherein Metropolitan contends that (i) the debtor did not possess an ownership interest in the Rents as of the commencement of the instant bankruptcy case and, thus, does not presently possess such an ownership interest, (ii) the Rents thus constitute neither property of the debtor's bankruptcy estate nor cash collateral within the meaning of § 363(a), and (iii) the Rents accordingly may not be used by the debtor post-petition pursuant to § 363(c)(2)(B) or otherwise, and

(c) the parties' briefs in support of their respective positions, as well as exhibits attached to their various pleadings;

and subsequent to notice and a hearing on the matter held on September 18, 2001, it is hereby **ORDERED, ADJUDGED, AND DECREED** that

(a) the Rents **DO NOT CONSTITUTE** either property of the debtor's bankruptcy estate or cash collateral within the meaning of § 363(a),

(b) the Rents, therefore, **MAY NOT BE USED** by the debtor post-petition pursuant to § 363(c)(2)(B) or otherwise

unless Metropolitan consents to such use, and

(c) the debtor's instant motion accordingly is **DENIED WITH PREJUDICE.**

The rationale for the Court's decision follows.

## I.

The parties, for the most part, appear to agree that the issue critical to the resolution of the debtor's instant motion is whether the Rents constitute property of the debtor's bankruptcy estate. Metropolitan contends that the Rents do not constitute property of the estate because, prior to the commencement of the instant bankruptcy case, the debtor, according to Metropolitan, assigned ownership of the Rents to Metropolitan, both via (a) Metropolitan's pre-petition enforcement of an assignment of rents clause contained in a mortgage of realty granted by the debtor to Metropolitan (hereafter "the Mortgage"), which assignment of rents was triggered by the debtor's admitted default under the Mortgage, and (b) the parties' pre-petition execution on April 27, 2000, of a separate document entitled "Assignment of Leases and Rents" (hereafter "Assignment Document"). The debtor maintains that the Rents constitute property of the estate because, according to the debtor, Metropolitan did not, by virtue of either an assignment of rents clause in the Mortgage or the Assignment Document, obtain more than a mortgage or security interest in the Rents; therefore, the debtor asserts that it retains title to the Rents as of the present time, making the Rents property of the estate.

The Court shall accept both of the preceding arguments of Metropolitan and, thus, will resolve the preceding dispute in favor of Metropolitan. With respect to Metropolitan's first argument predicated on the assignment of rent

clause contained in the Mortgage, the Court is constrained to rule as it does because (a) the Third Circuit has held that, under Pennsylvania law, a mortgagee under identical circumstances as are presented to Metropolitan, obtains ownership of assigned rents from the moment that notice is served by the mortgagee to a mortgagor's tenants to commence making rental payments to the mortgagee, *see Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 38–39 (3rd Cir.1993); *see also In re Dupell,* 235 B.R. 783, 792 (Bankr.E.D.Pa.1999) (citing and discussing *Commerce Bank* ), (b) Metropolitan served notices pre-petition on the debtor's tenants to commence making monthly rental payments to Metropolitan rather than the debtor, and (c) Metropolitan accordingly obtained ownership of the Rents pre-petition, which means that the Rents do not constitute property of the estate. As for Metropolitan's second argument predicated on the parties' pre-petition execution of the Assignment Document, the Court is constrained to rule as it does because (a) the Third Circuit has held that, under New Jersey law, an assignment of rents under a document separate and apart from a mortgage, which document is practically, if not completely, identical to the Assignment Document at issue herein, passes title to rents from an assignor's tenants to an assignee as of the execution date of said assignment document, *see In re Jason Realty, L.P.,* 59 F.3d 423, 427–429 (3rd Cir. 1995), (b) Pennsylvania law, the Court concludes, mandates a result similar to that which New Jersey law dictated in *Jason Realty* with respect to an assignment of rents via a separate document such as the instant Assignment Document, *see In re Remcor, Inc.,* 186 B.R. 629, 636–637 (Bankr.W.D.Pa.1995) (in Pennsylvania an absolute assignment of rights as security for a loan constitutes, as between an assignee and an assignor or anyone taking

under an assignor, a contractual transfer of title to such rights subject to a condition subsequent whereby the assigned rights are reconveyed to the assignor upon satisfaction of the assignor's underlying debt to the assignee-citation to, *inter alia, Musselman v. Sharswood Building & Loan Association,* 323 Pa. 550, 187 A. 419, 421 (1936)), and (c) the Assignment Document was executed by the parties pre-petition, which means both that Metropolitan obtained ownership of the Rents pre-petition and that the Rents do not constitute property of the estate.

Because the Court holds that the debtor did not possess an ownership interest in the Rents as of the debtor's bankruptcy petition filing date and, thus, that the Rents do not constitute property of the debtor's bankruptcy estate, the Court must also necessarily conclude that (a) the Rents do not constitute cash collateral within the meaning of § 363(a) given that property is not "cash collateral" unless the debtor's bankruptcy "estate ... ha[s] an interest" in such property, *see* 11 U.S.C. § 363(a) (West 2001), and (b) the Rents consequently may not be used by the debtor post-petition pursuant to § 363(c)(2)(B) given that such use is only permitted if the Rents constitute cash collateral.

**II.**

■ The debtor appears to also maintain that, even if the Rents themselves do not constitute property of the debtor's bankruptcy estate, the definition of "cash collateral" under 11 U.S.C. § 363(a)-and particularly that portion of § 363(a) defining "cash collateral" to include "the proceeds, products, offspring, rents, or profits of property" of the debtor's bankruptcy estate-nevertheless brings within its reach the Rents so that they may be used by the debtor if the Court so authorizes under 11 U.S.C. § 363(c)(2)(B). The debtor addi-

tionally argues that the particular provision of § 363(a) just referred to was added to the Bankruptcy Code in 1994 after the *Commerce Bank* decision was rendered, thereby nullifying the precedential effect of such decision on the matter presently before the Court. Unfortunately for the debtor, and as the Court pointed out in the last paragraph of its analysis in part I. above, property is not "cash collateral" unless the debtor's bankruptcy "estate ... ha[s] an interest" in such property, *see supra* p. 221; furthermore, such conclusion is dictated by the present version of § 363(a). Moreover, "proceeds, products, offspring, rents, or profits of property" of a debtor's bankruptcy estate are only cited in § 363(a) as examples of cash equivalents that *may* constitute "cash collateral" under § 363(a), *see* 11 U.S.C. § 363(a); however, for such cash equivalents to constitute "cash collateral," the debtor's bankruptcy estate must also have an interest in such cash equivalents as of the commencement of said debtor's bankruptcy case, *see Id.* Finally, § 363(c)(2)(B) requires that court authorization be obtained for a debtor's post-petition use of cash collateral in the ordinary course of business under § 363(c)(1), *see* 11 U.S.C. § 363(c)(2)(B) (West 1993); because § 363(c)(1) only refers to a debtor's continued post-petition use of property of the debtor's bankruptcy estate, *see* 11 U.S.C. § 363(c)(1) (West 2001), the clear implication is that cash collateral must constitute property of the estate. Therefore, the Court must reject any argument by the debtor that (a) the Rents constitute cash collateral irrespective of whether they are property of the debtor's bankruptcy estate, (b) the language of § 363(a) supports such a position by the debtor, and (c) the *Commerce Bank* decision does not bind the Court to rule as it presently does herein.

### III.

The debtor also attempts to distinguish the instant matter from *Commerce Bank* by pointing out that, unlike in *Commerce Bank*, Metropolitan both served notice upon the debtor's tenants and began receiving the Rents therefrom within the 90–day preference period under 11 U.S.C. § 547. *See Commerce Bank*, 5 F.3d at 38. Unfortunately for the debtor, such distinction between the instant matter and *Commerce Bank* is meaningless because, for several reasons, what Metropolitan obtained by taking said actions within such 90–day preference period does not constitute a preferential transfer that may be avoided under § 547.

First, Metropolitan's service of notice upon the debtor's tenants and commencement of the receipt of the Rents therefrom operated, under Pennsylvania law, to transform Metropolitan's security interest in the Rents via the Mortgage into an ownership interest in the Rents. *See Id.* at 38–39. The Court can accept that such transformation constitutes the transfer of an interest of the debtor that occurred within 90 days of the commencement of the instant bankruptcy case. However, and unfortunately for the debtor, such transfer cannot satisfy § 547(b)(5) because the transfer does not enable Metropolitan to receive more than Metropolitan would otherwise have received if the transfer had not been made, the case were one under Chapter 7, and Metropolitan received what it would obtain in a Chapter 7 proceeding. The preceding conclusion by the Court is dictated given that (a) Metropolitan possessed a security interest in the Rents prior to the transformation of the same into an ownership interest, (b) Metropolitan also possesses a mortgage upon the debtor's realty, and (c) the preceding interests in the debtor's property would allow Metropolitan to ultimately re-

ceive as much on its claim against the debtor in a Chapter 7 proceeding as does Metropolitan's enforcement of its rights under the Mortgage within the 90–day preference period.

Second, and more easily apparent although not any more problematic for the debtor than the § 547(b)(5) concern to which was just alluded, the debtor actually conveyed title to the Rents to Metropolitan via the Assignment Document, which transfer occurred when such document was executed on April 27, 2000. Because April 27, 2000, precedes by more than one year the debtor's June 26, 2001 commencement of the instant bankruptcy case, the transfer of title to the Rents is not a transfer that falls within § 547's 90–day preference period. Therefore, such transfer fails to satisfy § 547(b)(4).

In light of the foregoing, the Court holds that Metropolitan did not receive a transfer from the debtor that may be avoided as a preferential transfer under § 547. Consequently, the debtor's efforts to distinguish *Commerce Bank* from the instant matter is unavailing.

### IV.

Finally, the debtor in its brief refers the Court to the decision in *In re Guardian Realty Group, L.L.C.,* 205 B.R. 1 (Bankr. D.D.C.1997), and maintains that such decision supports the debtor's position that Metropolitan only possessed a security interest in the Rents as of the debtor's petition filing date. Unfortunately for the debtor, this Court cannot follow the decision or the reasoning in *Guardian Realty Group* because such decision is (a) distinguishable from the instant matter, *see Guardian Realty Group,* 205 B.R. at 3–4 (*Guardian Realty Group* is distinguishable from *Commerce Bank* because former is grounded in law of Delaware, which is a "lien theory" state, whereas former is

grounded in law of Pennsylvania, which is a "title theory" state), and (b) contrary to, not to mention highly critical of, the Third Circuit's decisions in *Commerce Bank* and *Jason Realty,* both of which not only are directly on point with respect to the instant matter but also are unquestionably binding on this Court.

### V.

**IN SUMMARY,** (a) the Rents do not constitute either property of the debtor's bankruptcy estate or cash collateral within the meaning of § 363(a), (b) the Rents, therefore, may not be used by the debtor post-petition pursuant to § 363(c)(2)(B) or otherwise unless Metropolitan consents to such use, and (c) the debtor's instant motion accordingly is **DENIED WITH PREJUDICE.**