

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-2005

# Sovereign Bank v. Schwab

Precedential or Non-Precedential: Precedential

Docket No. 03-4625

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sovereign Bank v. Schwab" (2005). *2005 Decisions.* Paper 777.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/777

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4625
_____


SOVEREIGN BANK, successor by merger with Main
Street Bank to Heritage National Bank and the Schuylkill
Haven Trust Co.,

Appellant

v.

WILLIAM G. SCHWAB, Trustee for
Keith S. Kirby and Kathy A. Kirby



_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cv-01049)
District Judge: Honorable James M. Munley

_____

Argued: January 10, 2005

Before: ROTH and CHERTOFF[*], <u>Circuit Judges</u>,
RESTANI[**], <u>Chief Judge</u>, United States Court of International
Trade

(Filed: July 6, 2005)

Douglas M. Marinos (Argued)
Douglas M. Marinos & Associates, P.C.
101 North Cedar Crest Boulevard
Allentown, PA 18104
        <u>Counsel for Appellant</u>

William G. Schwab
Michelle Wolfe
Jason Zac Christman (Argued)
William G. Schwab and Associates
811 Blakeslee Boulevard Drive East
P.O. Box 56
Lehighton, PA 18235
        <u>Counsel for Appellee</u>

---

[*] Judge Chertoff heard oral argument in this case but resigned prior to the time the opinion was filed.  The opinion is filed by a quorum of the panel. 28 U.S.C.§46(d).

[**] Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

2

## OPINION OF THE COURT

RESTANI, <u>Judge</u>.

Sovereign Bank ("the bank") appeals the district court's final order that affirmed the decision of the bankruptcy court ordering the bank to turn over rents to the bankruptcy estate. Because we conclude that the rents were not the property of the bankruptcy estate, we reverse.

## I.      Factual and Procedural History

The bank held mortgages on three rental properties in Pennsylvania. The mortgages contained assignment of rents provisions, and gave the bank the right to take possession of

3

the properties and collect the rents upon default.[1]  After the

owners of the properties defaulted, the bank filed a mortgage

foreclosure action and in April 1999, obtained a default

judgment.  In September 2000, the bank sent notice to the

properties' tenants informing them that it would be collecting

their rental payments.[2]  Later that month, the court of common

_____

[1]  The mortgages specified that

Lender shall have the right, without notice to Grantor, to take
possession of the Property and collect the Rents, including
amounts past due and unpaid, and apply the net proceeds,
over and above Lender's costs, against the indebtedness.  In
furtherance of this right, Lender may require any tenant or
other user of the Property to make payments of rent or use
fees directly to the Lender. . . . Lender may exercise its rights
under this subparagraph either in person, by agent, or through
a receiver.

[App. Vol. 2 at 89, 117, 126].

[2]  Although the Appellee disputes whether the notice letters
sent by the bank were correctly addressed or in fact received
by all tenants, the record contains copies of 13 letters, and the
                                        (continued...)

4

pleas granted the bank's petition for preliminary judgment and appointed the bank as receiver "to take possession, charge and control of the mortgaged propert[ies]." [Sept. 21, 2000 Order, App. Vol. 2 at 210]. In January 2001, the mortgaged properties were sold to the bank for cost by the county sheriff.

In February 2001, the mortgagors filed a Chapter 7 petition and William G. Schwab was appointed as bankruptcy trustee ("the trustee"). The trustee commenced a bankruptcy adversary action seeking turnover of the rental funds collected by the bank in its capacity as receiver. [App. Vol. 2 at 22–24]. In response, the bank filed an answer and a motion for summary judgment. [App. Vol. 2 at 31–40, 57–63]. The bankruptcy court found in favor of the trustee, and ordered the bank to turn over the rents to the bankruptcy estate, as funds in the hands of a custodian. The court explained that "because [the bank] took control of th[e] property as a

_____

[2](...continued)
bank received tenants' rental payments. [App. Vol. 2 at 192–208]. Indeed, those rents are at issue here.

5

custodian and not the owner . . . the legal interest did not

transfer . . . ." [App. Vol. 2 at 456]. The district court

affirmed the bankruptcy court's decision. [App. Vol. 1 at

2–6]. The bank now appeals to this court.[3]

## II. Discussion

The issue on this appeal is whether rents collected by

the bank are property of the bankruptcy estate. Property of

the bankruptcy estate is defined as "all legal or equitable

interests of the debtor in property as of the commencement of

the case" wherever located by whomever held. 11 U.S.C. §

541(a)(1) (2000). Thus, determining whether the rents here

are the property of the bankruptcy estate requires an inquiry

---

[3] We have jurisdiction over this matter pursuant to 28 U.S.C. § 158(d) (2000). Because the district court acted as an appellate court in reviewing the final order of the bankruptcy court, our review of its determination is plenary. Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 122 (3d Cir. 1999). In reviewing the decision of the bankruptcy court, we exercise the same standard of review as the district court. Id. Legal determinations are reviewed de novo. Id. Factual determinations are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013.

into whether the debtor had any legal or equitable interests in those rents as of the date of the bankruptcy petition.[4]

The bank argues that the debtor's interest in the rents was extinguished pre-petition when the owner defaulted and the bank exercised its rights under the mortgage's assignment of rents provision. The trustee, on the other hand, contends that the debtor maintained an interest in the rents because they were collected by the bank in its capacity as a receiver.

We conclude that the debtor had no interest in the rents when the petition was filed, because (A) the bank took title to the rents pre-petition, and (B) its subsequent appointment as receiver did not affect that title. Accordingly, we hold that

---

[4] Contrary to the district court's finding, the "property of the estate" at issue in this case is not the underlying real estate, but rather the rental funds it generated. See Complaint to Require Turnover of Property By Custodian, App. Vol. 2 at 23 (requesting that the bank turn over "rental payments, security deposits and investment income" representing property of the estate under § 541). See also 11 U.S.C. § 541(a)(6) (defining property of the estate as "[p]roceeds, product, offspring, rents, or profits of or from property of the estate . . .").

the rents are not the property of the bankruptcy estate.

## A. Title to the Rents

The bank argues that it took the necessary and appropriate steps to obtain legal title to the rents, thereby extinguishing the debtor's interest in the funds. The bank relies on Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34 (3d Cir. 1993). In that case, we considered the ownership of assigned rents in bankruptcy under Pennsylvania law.[5] After the owner of rental properties defaulted on a mortgage, the mortgagee, who held a mortgage containing an assignment of rents provision, obtained constructive possession of the properties by sending notice to the tenants and collecting the rents. The owner then filed for Chapter 11 protection and sought use of the rents. We held that the mortgagee obtained title to the rents by taking the steps that it

_____

[5] The property interests of mortgagor and mortgagee are created and defined by state law. Butner v. United States, 440 U.S. 48, 55 (1979). Pennsylvania follows the title theory whereby the mortgage is considered a conveyance in fee simple to the creditor. Commerce Bank, 5 F.3d at 38.

did, and as a result, the rents were not the property of the debtor's estate available for use in its reorganization plan. Id. at 38.

The facts in this case are similar to those in Commerce Bank. The bank held mortgages containing provisions assigning the rents in the event of default. The owners did default, and the bank sent notice to the tenants informing them that it would be collecting their rents. In doing so, the bank enforced its rights under the mortgage, and obtained constructive possession of the properties and title to the rents. See id. at 39; see also Robin Assocs. v. Metro. Bank & Trust Co. (In re Robin Assocs.), 275 B.R. 218, 221 (Bankr. W.D. Pa. 2001) (explaining that "under Pennsylvania law, a mortgagee . . . obtains ownership of assigned rents from the moment that notice is served by the mortgagee to a mortgagor's tenants to commence making rental payments to the mortgagee"); J.H. Streiker & Co. v. SeSide Co. (In re SeSide Co.), 152 B.R. 878, 883 (E.D. Pa. 1993) (citations

9

omitted) ("The right of a mortgagee to receive rents, even when the mortgage contains an assignment provision, is grounded on 'possession' of the underlying realty. A mortgagee can obtain 'possession' of realty and consequently obtain a present right to receive rents . . . by taking 'constructive possession' of the realty by serving demand notices on the mortgagor's tenants."). Therefore, when the debtor filed for bankruptcy protection four months later, it no longer possessed an interest in the rents.[6]

## B. The Bank's Appointment as Receiver

---

[6] The trustee argues that because ownership of the rents was not previously raised by the bank or addressed by the lower courts, this court need not address this issue. The trustee insists that the only relevant issue is whether the bank, as a custodian, had the duty to turn over the rental funds. Contrary to the trustee's assertion, however, this issue was raised by the bank as an affirmative defense, [App. Vol. 2 at 38–39], and addressed by both the bankruptcy and district courts. [App. Vol. 2 at 456; App. Vol. 1 at 2–6]. Moreover, determining whether a custodian must turn over certain property requires an inquiry into the ownership of the property. See 11 U.S.C. § 543(b)(1) (requiring a custodian to "deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property . . .") (emphasis added).

10

The lower courts held, and the trustee argues, that Commerce Bank is inapplicable to this situation, because unlike the mortgagee in that case, the bank here sought and was appointed as receiver of the mortgaged properties. The trustee asserts that the bank had several options, including exercising its rights under the assignment of rents provision, requesting that the court appoint a third party receiver, or seeking appointment of itself as receiver. In doing the latter, the trustee contends, the bank became an officer of the court with a fiduciary duty to turn over the funds to the bankruptcy trustee.

A receiver owes a fiduciary duty to the owners of the property under his care. Under the bankruptcy code, a receiver is a custodian "that is appointed or authorized to take charge of property of the debtor . . . for the benefit of the debtor's creditors." 11 U.S.C. § 101(11)(C). Similarly, courts applying Pennsylvania law have emphasized the fiduciary responsibility held by a receiver. See Warner v.

11

Conn, 32 A.2d 740, 741(Pa. 1943) (citations and quotations omitted) (explaining that a receiver has the duty "to protect and preserve, for the benefit of the persons ultimately entitled to it, an estate over which the court has found it necessary to extend its care"); Seidler v. Gayville Supply Co., 10 Pa. D. & C. 200, 201 (Pa. D.&C. 1927) ("A receiver represents not only the corporation but all its creditors, and, as to the latter, it is his duty to secure all the assets available for their payment.").

As conceded by the trustee, however, notwithstanding this fiduciary duty, the requirement to turn over property under 11 U.S.C. § 543 is triggered only if (1) the custodian has possession, custody, or control of the property; and (2) such property is the property of the debtor.[7] See Appellee's

_____

[7] Section 543(b)(1) specifies that a custodian shall deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian
(continued...)

12

Counter Statement at 20. In this case, the second prong was not met. The bank obtained title to the rents before its receivership appointment.[8] As a result, the rental funds were not the "property of the debtor" required to be turned over by the bank under § 543(b)(1).

Furthermore, the trustee's suggestion that the bank's receivership somehow divested it of ownership in the rents, or transferred title to the estate, is unconvincing. Neither Pennsylvania nor New Jersey case law supports the trustee's position. First, Pennsylvania case law emphasizes that a

---

[7](...continued)
acquires knowledge of the commencement of the case.

11 U.S.C. § 543(b)(1).

[8] The fact that the bank was appointed as receiver less than a month after obtaining title to the rents does not mean that it collected the rents as a custodian. Under Pennsylvania law, a mortgagee obtains ownership of assigned rents from the moment that notice is served. See discussion supra Part II.A. Moreover, once the bank obtained title to the rents, the owners no longer had an interest in maintaining the underlying property. As a result, the bank sought to be appointed as receiver to ensure that the property was properly managed so as to protect its own financial interests.

receiver assumes only the interest held by the owner of the property.  See Warner, 32 A.2d at 741 (explaining that a receiver "takes only the interest of the owner of the property subject to all valid liens and encumbrances against it"); Commonwealth Trust Co. v. Harkins, 167 A. 278, 281 (Pa. 1933) (noting that "receivers stand in the shoes of the owner and take only his interest in the property subject to all valid liens against it"); Pearson Mfg. Co. v. Pittsburgh Steamboat Co., 163 A. 680, 682 (Pa. 1932) (explaining that a receiver takes only the interest of owner of the property).  Therefore, when it was appointed receiver, the bank took only the debtor's interest in the property, which no longer included title to the rents.  The appointment did not change the debtor's ownership rights.

In addition, New Jersey case law indicates that a receivership appointment does not divest a mortgagee's legal title to rental funds.  In First Fid. Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P.), 59 F.3d 423 (3d Cir. 1995), for

14

example, after the owner's default, the mortgagee notified tenants that it would be collecting the rents pursuant to the mortgage's assignment of rents provision. The mortgagee then filed an application for appointment of receiver and the owner filed for chapter 11 bankruptcy. We held that, under New Jersey law, the assigned rents were not property of the estate, and not available for use in the debtor's plan. Id. at 429. Under similar facts in MacArthur Executive Assoc. v. State Farm Life Ins. Co., 190 B.R. 189, 195 (D.N.J. 1995), the court held that because the mortgagee held title to the rents, they were no longer property of the bankruptcy estate. Therefore, once title to rents vests in a mortgagee under New Jersey law,[9] a receivership appointment does not convey that

_____

[9] Pennsylvania law governs this matter. We discuss New Jersey law simply because Jason Realty dealt with New Jersey law. The fact that New Jersey is a lien theory state and Pennsylvania is a title theory jurisdiction, however, does not destroy the relevance of these cases. Lien theory states differ from title theory states in that they "treat a mortgage as conveying no title to the mortgagee but as creating only the right to sell the property to satisfy the secured debt in the

(continued...)

15

property back into the debtors' estate.

In sum, although the bank—as a receiver—took possession and control of the mortgaged properties, it did not obtain any rights to the rents. The bank held title to the rents by enforcing its rights under the mortgage; it took control of the real property through its appointment as receiver.

### III.    Conclusion

For the foregoing reasons, we REVERSE the order of the district court, and REMAND for proceedings consistent with this opinion.

---

[9](...continued)
event of default . . ."  Ann M. Burkhart, Freeing Mortgages of Merger, 40 Vand. L. Rev. 283, 322 (1987).  Thus, once title has been determined, the distinction between the two theories becomes moot.  What is of note here is that after title vests under either theory, the appointment of a receiver under the bankruptcy code does not alter that ownership or expand the rights of a debtor in the hands of an estate.  See United States v. Whiting Pools, Inc., 462 U.S. 198, 204 n.8 (1983) ("The legislative history [of §541(a)(1)] indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.").