**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2072
_____

In Re: VINCENZA LEONELLI-SPINA,
                                        Debtor


JAMES R. ALBRO

v.

VINCENZA LEONELLI-SPINA,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-09-cv-01864)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit LAR 34.1(a)
March 10, 2011

Before:   SCIRICA, AMBRO and VANASKIE, *Circuit Judges*

(Filed : May 4, 2011)
_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

This appeal concerns a March 16, 2009, Bankruptcy Court decision in an adversary proceeding granting summary judgment to creditor James R. Albro. The Bankruptcy Court determined that the doctrine of collateral estoppel applied to prevent Appellant/Debtor Vincenza Leonelli-Spina ("Leonelli-Spina") from defending the dischargeability of her debt to Albro. The District Court affirmed the decision of the Bankruptcy Court, and this appeal followed. Because there was no error in the application of the doctrine of collateral estoppel to preclude Leonelli-Spina from relitigating the questions of whether she had engaged in conduct constituting fraud and breach of fiduciary duties, we will affirm.

I.

As we write only for the parties, who are familiar with the facts and procedural history of the case, we set forth only those facts necessary to our analysis. Leonelli-Spina was a New Jersey attorney, initially employed as an associate in the firm of John Feczko. In 1994, the firm undertook the representation of John R. Albro, a police officer who was filing suit against his employer. In the context of this suit, Albro directed that the proceeds of his pension checks should be held in trust by his attorneys.

Leonelli-Spina separated from the Feczko firm in 1996, and Albro remained as her client. Leonelli-Spina later claimed that she and Albro entered into an hourly fee arrangement. Albro, however, asserted that the representation was on a contingent fee basis.

Albro's case against his employer was finally settled in 2001. In addition to back wages and an increased pension as well as payment for sick leave and other benefits, Albro's employer paid him $270,000 for the release of other claims and $165,000 for attorneys' fees.

Albro understood that the fee portion of the settlement with his former employer satisfied his entire fee obligation to Leonelli-Spina. Subsequent to the settlement with his employer, however, Albro learned that Leonelli-Spina had accessed the trust account into which his pension payments had been deposited and withdrew funds for counsel fees. He also learned that the amounts withdrawn from his trust account were in addition to the $165,000 allotted to fees in the settlement.

Albro eventually brought suit against Leonelli-Spina in New Jersey Superior Court. On September 10, 2007, the New Jersey Superior Court found that Leonelli-Spina had violated the rules of Professional Conduct in withdrawing the funds, had committed common-law fraud, tortiously converted Albro's funds, failed to pay Albro's taxes, and committed breach of contract and breach of fiduciary duty. Compensatory damages, including interest and penalties, totaling $486,932.28 were awarded. Because of the death of the trial judge, an award of punitive damages was delayed until October 3, 2008, when they were assessed at $350,000, together with $145,297.85 in attorney's fees and $16,305 in costs. *See Albro v. Leonelli-Spina*, No. A-2534-08T1, 2010 WL 3075616

3

(N.J. Super. App. Div. Aug. 3, 2010) (awarding punitive damages), *cert. denied*, 12 A.3d 210 (N.J. Jan. 7, 2011).[1]

Leonelli-Spina filed for bankruptcy on November 1, 2007. On September 15, 2008, the Bankruptcy Court entered an order confirming her Chapter 11 Plan of Reorganization, and recognizing that the bankruptcy claim was filed in good faith. Within this context, Albro commenced an adversary proceeding and filed a motion for summary judgment in the Bankruptcy Court, requesting the court to find that the New Jersey judgment was not dischargeable in bankruptcy. This was so, he claimed, because the debt was incurred as a result of Leonelli-Spina's commission of fraud or defalcation while acting in a fiduciary capacity. The Bankruptcy Court agreed, finding that the question of whether Leonelli-Spina's actions were fraudulent had been litigated in the state court action and could not be relitigated in the bankruptcy proceeding.

Leonelli-Spina then appealed to the U.S. District Court for the District of New Jersey, which affirmed the Bankruptcy court ruling in a decision dated March 31, 2010. This appeal followed.

II.

The Bankruptcy Court had jurisdiction over the core bankruptcy proceeding pursuant to 28 U.S.C. § 157. The District Court had jurisdiction pursuant to 28 U.S.C § 158(a) and § 1334(a). We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1) and 28 U.S.C. § 1291.

---

[1] As a result of Leonelli-Spina's conduct, she was disbarred in September 2008. *In re Leonelli-Spina*, 957 A.2d 211 (N.J. 2008).

"Because the district court acted as an appellate court in reviewing the final order of the bankruptcy court, our review of its determination is plenary. In reviewing the decision of the bankruptcy court, we exercise the same standard of review as the district court. Legal determinations are reviewed *de novo*. Factual determinations are reviewed under the clearly erroneous standard." *Sovereign Bank v. Schwab*, 414 F.3d 450, 452 n.3 (3d Cir. 2005) (citations omitted).

Debts incurred as a result of fraudulent conduct or defalcation while acting as a fiduciary are not dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(2)(A) and (a)(4). The Bankruptcy Court concluded that Leonelli-Spina's fraud or defalcation was conclusively established in the state court action that resulted in Albro being a judgment creditor. Accordingly, it found that Leonelli-Spina's indebtedness to Albro was not dischargeable.

On appeal, Leonelli-Spina first argues that the Bankruptcy Court incorrectly applied collateral estoppel to the decision of the New Jersey Superior Court. The doctrine of collateral estoppel involves "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). In New Jersey, collateral estoppel applies

> if the issue decided in a prior action is identical to the one presented in the subsequent action, if the issue was actually litigated – that is, there was a full and fair opportunity to litigate the issue – in the prior action, if there was a final judgment on the merits; if the prior determination was essential to the judgment, and if the party against whom preclusion is asserted was a party or in privity with a party to the proceeding.

*Perez v. Rent-A-Center, Inc.*, 892 A.2d 1255, 1261 (N.J. 2006).[2] After reviewing all of the evidence before it, the Bankruptcy Court concluded that these elements were satisfied. It determined that the issues of fraud, tortious conversion of funds, breach of contract, breach of fiduciary duty, and breach of good faith and fair dealing were at issue in the Superior Court action, and that these issues arose out of Leonelli-Spina's involvement with her client Albro's funds. It found that the New Jersey Superior Court rendered a decision and judgment, including compensatory and punitive damages on the matter. It further found that the Superior Court's determination of fraud and defalcation while acting in a fiduciary capacity were essential to its judgment, and that the parties in the Superior Court proceeding were identical to those appearing in the adversary proceeding. After a careful review of the facts, we find that the Bankruptcy Court did not err in determining that collateral estoppel applied to the Superior Court's finding of fraud and defalcation.[3]

---

[2] "In determining whether to accord preclusive effect to a state-court judgment, we begin with the fundamental principle that judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (internal quotation marks omitted). Accordingly, we apply New Jersey's definition of collateral estoppel to determine whether litigation of the fraud and defalcation issues is, indeed, collaterally estopped in this case.

[3] As an underlying matter, Leonelli-Spina contends that the New Jersey Superior Court incorrectly *failed* to apply collateral estoppel to the earlier decision of the Bankruptcy Court. Had the New Jersey Superior Court done so, she claims, it would not have inquired into whether she was attempting to hide assets and thus deserved punitive damages. This argument would be better addressed in Leonelli-Spina's appeal from the decision of the New Jersey Superior Court.

Leonelli-Spina's second argument is closely related to her first. She claims that the Bankruptcy Court erred when it did not grant a hearing to determine whether collateral estoppel applied to the Superior Court's decision. In essence, she claims that, had the Bankruptcy Court reviewed the proceedings in the Superior Court, it would have determined that her disbarment resulted from the nefarious actions of her bookkeeper, and that there was no fraud. The case that she relies on, however, *In re Ross*, 602 F.2d 604 (3d Cir. 1979), is distinguishable on its facts. In *Ross,* the parties disputed whether the Second Circuit's finding that parties' violation of Section 10(b) of the Securities and Exchange Act of 1934 could be used to preclude litigation of the parties' fraudulent intent in a bankruptcy proceeding. We remanded for an evidentiary hearing because it was unclear whether the issue of fraudulent intent had been litigated and decided in the Second Circuit. There is no such difficulty here.

Finally, Leonelli-Spina contends that, even if the finding of fraud is sustained, only some portions of her debt were attributable to fraud and/or defalcation, so that the District Court should have ordered the Bankruptcy Court to delineate precisely which parts of the debt were dischargeable and which were not. As the District Court observed, however, an examination of the underlying state court opinion and judgment makes clear that the award against Leonelli-Spina arises directly from her fraudulent conduct or defalcation of pension payments entrusted to her. Apportionment of damages was not warranted. Accordingly, this argument has no merit.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

7